**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Dec 26 2013, 5:23 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KIMBERLY A. JACKSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| DONALD LEEHY, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 42A05-1305-CR-264 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE KNOX SUPERIOR COURT
The Honorable W. Timothy Crowley, Judge
Cause No. 42D01-0506-FB-129

**December 26, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Donald Leehy ("Leehy") appeals the revocation of his probation imposed as part of a suspended sentence for Burglary, as a Class C felony. He raises one issue on appeal: whether his waiver of counsel during the probation revocation proceedings was knowing, voluntary, and intelligent.

We affirm.

**Facts and Procedural History**

On September 8, 2006, Leehy pleaded guilty to and was convicted of two counts of Burglary, each as a Class C felony—one in cause number 42D01-0401-FB-029 ("FB-029"), and one in cause number 42D01-0506-FB-129 ("FB-129"). For each offense, he was sentenced to six years imprisonment. Each sentence was suspended to probation, and the sentence in FB-129 was run consecutive to FB-029.

By April 2013, Leehy's probation had been revoked and he had served his executed sentence in FB-029. After his release from prison, he began to serve probation in FB-129, which is the subject of the instant appeal.

On April 8, 2013, while still serving probation in FB-129, Leehy was arrested by the Vincennes City Police Department on suspicion of burglary. On April 11, 2013, Leehy was charged with Burglary. The same day, the State filed a notice of probation violation, alleging that Leehy had violated the terms of his probation and that probation should be revoked.

On April 15, 2013, an initial hearing was conducted on the State's notice of probation violation. At the beginning of the hearing, the trial court advised Leehy of his right to be

2

represented by counsel. Leehy told the trial court he did not wish to be represented by counsel, and simply wanted to "get it over with." (Tr. at 4.) The trial court then entered into an extended discussion with Leehy, advising him that he was facing the revocation of his probation, explaining that his probation in FB-129 was still ongoing, reminding him that he faced substantial jail time in the event that his probation was revoked, and advising that he faced revocation as a result of the pending Burglary charge.

Throughout the initial hearing, Leehy repeatedly expressed his desire to proceed without counsel, both with and without prompting from the trial court. At one point, Leehy interrupted an advisement from the trial court, saying, "[G]o take care of it now." (Tr. at 5.) At the conclusion of the hearing, the trial court entered a denial of the allegation that Leehy had violated his probation and scheduled a probation revocation hearing. The trial court again advised Leehy that he had a right to counsel, and asked Leehy to send a letter to the court if Leehy decided to exercise that right; Leehy replied, "I won't change my mind, Judge. I won't." (Tr. at 10.)

On April 30, 2013, the trial court conducted the probation revocation hearing. Leehy appeared pro se, and during the hearing cross examined several witnesses. After the State submitted into evidence its calculation of his credit time, Leehy objected to the determination. The trial court explained the status of his probation, and when asked whether he understood, Leehy replied, "Yeah. Yes." (Tr. at 42.) In addition, Leehy indicated to the trial court that he did not have counsel in the pending criminal charges that had resulted in

3

the probation revocation proceedings because he had waived counsel during those proceedings, as well.

After finding that Leehy had violated the terms of his probation, the trial court asked if Leehy wished to be represented by appellate counsel. At that time, Leehy expressed significant confusion about the foregoing proceedings and agreed to the appointment of appellate counsel.

This appeal ensued.

**Discussion and Decision**

Leehy asks that we reverse the trial court's order revoking his probation in FB-129, because his waiver of counsel in the probation revocation proceedings was not knowing, voluntary, and intelligent.

"Probation is a favor granted by the State, not a right to which a defendant is entitled." Butler v. State, 951 N.E.2d 255, 259 (Ind. Ct. App. 2011). A defendant in a probation revocation proceeding "does not enjoy the full panoply of rights" afforded to him at the trial stage. Cooper v. State, 900 N.E.2d 64, 66 (Ind. Ct. App. 2009). Nevertheless, certain due process protections do apply. Id. These include "confrontation, cross-examination, and representation by counsel." I.C. § 35-38-2-3(f).

"The Sixth Amendment does not 'force a lawyer upon [a criminal defendant] … when he insists that he wants to conduct his own defense." Kubsch v. State, 866 N.E.2d 726, 736 (Ind. 2007) (quoting Faretta v. California, 422 U.S. 806, 807 (1975)). When a defendant proceeds in a probation revocation proceeding without counsel, the record must reflect that

4

he knowingly, voluntarily, and intelligently waived that right. Butler, 951 N.E.2d at 259. This includes a requirement that the defendant "be advised of the potential pitfalls surrounding self-representation so that it is clear that he knows what he is doing and [that] his choice is made with eyes open." Kubsch, 866 N.E.2d at 736 (citations and quotations omitted).

Thus, the trial court must determine whether the defendant is competent to represent himself and to establish a record of the waiver. Butler, 951 N.E.2d at 259. "There are no magic words a judge must utter" in making this evaluation. Kubsch, 866 N.E.2d at 736. Whether a defendant's waiver was knowing, voluntary, and intelligent thus turns on "'particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused.'" Id. (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). We review de novo the trial court's finding that defendant has waived his right to counsel. Butler, 951 N.E.2d at 260.

Here, the trial court asked Leehy numerous times whether he wished to have an attorney represent him during the probation revocation proceedings. Leehy insisted that he did not want counsel on numerous occasions throughout the initial hearing on the State's notice of probation violation. Leehy's answers were consistent, and he was so insistent upon proceeding pro se that he interjected into a statement by the trial court his desire not to have counsel appointed. Leehy did so in order to "get it over with," (Tr. at 4) and insisted that he would not change his mind. Leehy maintained his position after being reminded that the

revocation of his probation could result in prison time, and made clear at the beginning of the probation revocation hearing on April 30, 2013, that he was proceeding pro se.

Leehy now insists that the trial court disregarded evidence in the record that should have led it to conclude that he could not properly waive counsel. Specifically, Leehy argues that the trial court did not inquire into his education level, did not pay due attention to his history of mental illness, and should have observed Leehy's confusion with the proceedings.

We observe that Leehy expressed confusion over the sentencing in FB-029 and FB-129—particularly concerning credit time—and at various points indicated that he was or should have been on medication at certain points in time.[1] Yet while Leehy mentioned the use of medication at various points in the revocation proceedings, he did not refer to any specific diagnoses. And there is no substantial evidence in the record that would indicate to the trial court the extent to which any psychological conditions might have borne upon Leehy's ability to represent himself effectively or otherwise prevented him from understanding the effect of a decision to go without representation of counsel.

Leehy has numerous prior convictions for misdemeanors and felonies, and was facing a charge of Burglary during the pendency of the probation revocation proceedings. Leehy had significant prior experience in the criminal justice system, had previously been represented by counsel, and had waived counsel in the then-pending Burglary proceeding.

Unlike such cases as Butler, Leehy did not waive counsel as a prelude to admitting to a probation violation. The trial court provided Leehy with an opportunity to obtain counsel,

---

[1] When this period occurred—whether during the pre-guilty plea proceedings in 2005 and 2006, or during the probation revocation proceedings—is unclear.

and during the initial hearing told him how to obtain appointed counsel during the pendency of the probation revocation proceedings. Also during the initial hearing, the trial court declined to enter a finding that Leehy had decided to admit to violating probation, even after Leehy insisted several times that he simply wanted to resolve the matter. Leehy represented himself during the contested probation revocation hearing, during which he cross-examined the State's witnesses and objected on at least one occasion to the admissibility of exhibits. And after his probation revocation hearing, Leehy expressed interest in representation of counsel when previously he insisted on proceeding pro se.

Altogether, then, we cannot conclude that Leehy's waiver of counsel was not knowing, voluntary, and intelligent. And as Leehy advances no other challenge to the trial court's order, we accordingly affirm the court's revocation of his probation.

Affirmed.

FRIEDLANDER, J., and KIRSCH, J., concur.